

# U.S. Department of Justice

*United States Attorney's Office*
*District of Delaware*

---

*The Nemours Building*                    *(302) 573-6277 x 156*
*1007 Orange Street, Suite 700*           *FAX (302) 573-6220*
*P.O. Box 2046*                           *TTY (302) 573- 6274*
*Wilmington, Delaware 19899-2046*         *Toll Free (888) 293-8162*
                                          *Patricia.Hannigan@usdoj.gov*

May 18, 2005

Honorable Kent A. Jordan
District Judge
6325 J. Caleb Boggs Federal Bldg
844 King Street
Lockbox 10
Wilmington, DE 19801

       **RE:   EEOC v. Initial Security**
              **Civil Action No. 04-1309-KAJ**

Dear Judge Jordan:

     Please accept this joint letter from Plaintiff, the U.S. Equal Employment Opportunity Commission (hereinafter, the "E.E.O.C." or the "Commission") and Defendant, Initial Security, regarding the status of the litigation in the above-referenced matter. In its Complaint, the EEOC requested that this matter be listed as a jury case. This case was brought on behalf of William H. Spikes on September 28, 2004 to correct alleged unlawful employment practices on the basis of race, (black) and retaliation for complaining of race discrimination. It is the EEOC's position that Mr. Spikes was adversely affected by such practices when he was unlawfully terminated in September of 2002.

     Initial Security contends that Mr. Spikes was treated fairly at all times, and that his employment was terminated after numerous complaints of poor performance.

Matters In Issue:

 The parties agree that the two issues in this case are as follows:

Issue 1:  Whether or not defendant is liable for violating Title VII on the basis of race by subjecting William Spikes to differential treatment apart from similarly situated Caucasian employees.

Plaintiff's Position

 On or about September 12, 1997, William Spikes was hired by Initial Security as a full-time Security Officer to work at the Chase Manhattan Bank in Wilmington, DE. At the time of his hire, Mr. Spikes was paid $7.15 per hour, earning subsequent raises which increased his pay to $8.39 by September 1999. In April 2000, Mr. Spikes was promoted to the position of Site Supervisor at the rate of $11.50 per hour, which increased to $12.50 within two months. He continued in that position until his unlawful termination in September 2002.

 From the beginning of his employment, Mr. Spikes noticed disparities in job assignments, and unequal hiring and promotion practices. In 1999, he complained of race discrimination to the then Initial Security District Manager, John Theran, and to the client representative of Chase Manhattan, Samuel Pratchett. Mr. Spikes contends that Theran responded that he was "unaware" of such practices, but he informed Mr. Spikes that he was "going to look into it."

 As Site Supervisor, Mr. Spikes was responsible for the scheduling and supervising of Chase's security program in Wilmington, Delaware. In late 2001, Mr. Spikes learned that a white Site Supervisor (Jack Dukes), assigned to a different location in Newark, Delaware was earning significantly more than he per hour. Additionally, Jack Dukes was given bonuses which were not given to Mr. Spikes. Mr. Spikes learned of the pay disparity during the summer of 2001. He alleges that throughout his employment after learning of the significant pay disparity, he repeatedly complained about the disparity to management. After nothing was done in response to his complaints, and he was terminated, Mr. Spikes filed a charge with the EEOC, alleging that he was discriminated against based on his race, and was retaliated against when he was terminated.

Defendant's Position

 Defendant contends that Mr. Spikes was treated fairly and equitably at all times and that his allegations of disparate treatment are without foundation. In any event, the allegations are time barred.

Mr. Dukes received a higher pay rate due to a request made by Initial's client, Chase Manhattan. This request was approved by Initial due to Mr. Dukes' increased administrative responsibilities. The increased pay rate was passed directly on to Chase. Mr. Dukes and Mr. Spikes were in no way comparable. Mr. Duke's position involved a greater level of responsibility, he managed many more employees, and he had many administrative responsibilities which Mr. Spikes did not have. Mr. Dukes was responsible for a large suburban campus; Mr. Spikes was Site Supervisor at an empty building.

Issue: 2.    Whether or not Defendant is liable for violating Title VII on the basis of retaliation by terminating Mr. Spikes.

Plaintiff's Position:

Mr. Spikes informed Lola Granberry, Console Operator on or about June 14, 2002, that he was going to the EEOC to file a charge of discrimination and advised that he could be contacted by cell phone, as was the practice if a Site Commander was off-site. Soon thereafter, Mr. Spikes began to notice that his work performance was more closely scrutinized. On September 4, 2002, Mr. Spikes called into Ms. Granberry to inform her that he would be approximately 15 minutes late because he had to pick up a medical prescription. On September 5, 2005, Mr. Spikes was called upon by the building manager to check on a spill in the parking garage, a spill that happened to originate from Mr. Spike's own car. Mr. Spikes' purpose in the garage was only to clean the spill and then to immediately return to the console area. That same day, Debbie Baul, Personnel Manager, arrived when Mr. Spikes was performing his duties in the parking garage area.

On September 10, 2002, Mr. Spikes was advised by Gordon Ellis, Area Manager, that "we have lost confidence in your ability as a Site Commander" and further stated, "We no longer need your services." At that time, Mr. Spikes was abruptly fired. It was not until Mr. Spikes filed for unemployment compensation that he learned from the Delaware Department of Labor that an Employee Violation Report was issued by Defendant to him, indicating that he was terminated from his employment on September 10, 2002, for allegedly not being at his post on September 4, 2002 and September 5, 2002. The Commission maintains that Mr. Spikes did not leave his post unattended, and even when not at the console, Mr. Spikes was still on-site or in contact via radio at all times. Further, the EEOC contends that the Defendant's reason for terminating Mr. Spikes served merely as a subterfuge for Defendant's intent to terminate Mr. Spikes for engaging in protected activity by attempting to file a charge with the EEOC, and because of his prior complaints of racial bias in promotions and pay by Defendant.

Defendant's Position

        Mr. Spikes did not file his charge with the EEOC until after his employment was terminated.  Mr. Ellis did not have any knowledge of Mr. Spikes' intent to file a charge of discrimination until he actually received a copy of the charge after Mr. Spikes' termination of employment.

        Mr. Ellis began receiving complaints from Initial's client, REIT Management, about Mr. Spikes' performance in 2002.  He verbally addressed these issues with Mr. Spikes, but the problems continued.  In September, 2002, Mr. Spikes was reported to be working on his car in the garage during his shift, and as a result, REIT Management demanded that Mr. Spikes be removed from the building.  Mr. Ellis met with Mr. Spikes before terminating his employment, and reviewed Mr. Spikes' performance issues, which included failure to adequately supervise his guards, problems using the computer and lateness.  With the exception of the computer problem, Mr. Spikes did not dispute these issues, and his employment was then terminated.

Discovery Issues:

        Defendant deposed William Spikes on March 15, 2005.  On March 17, 2005 the Commission deposed Arthur Kitchen and Gordon Ellis, defense witnesses.  The Commission will conduct depositions on May 24, 2005 of defense witnesses Lola Granberry and Deborah Baul.  There are no discovery disputes to report.

        Defendant has issued a subpoena *duces tecum* for Mr. Spikes' medical records, and is expecting to receive a copy of the signed HIPAA authorization from Mr. Spikes permitting the disclosure of these records.  Defendant is also expecting to receive Mr. Spikes' income tax returns.  Defendant intends to issue additional subpoenas *duces tecum*, including subpoenas for Mr. Spikes' military records and criminal records.

Dispositive Motions and Settlement Possibilities:

        At this time, Plaintiff EEOC does not intend to file any dispositive motion in this matter prior to the time of trial.

        Defendant <u>does</u> intend to file a dispositive motion prior to trial.

Concerning settlement, the parties are open for discussion of settlement before the close of discovery. Mediation before Magistrate-Judge Thynge has been scheduled for August 16, 2005.

Respectfully,

COLM F. CONNOLLY
United States Attorney

By:   /s/Patricia C. Hannigan
        Patricia C. Hannigan
        Assistant United States Attorney
        Delaware Bar I.D. No. 2145
        The Nemours Building
        1007 Orange Street, Suite 700
        P. O. Box 2046
        Wilmington, DE 19899-2046
        (302) 573-6277
        Patricia.Hannigan@usdoj.gov

By:   /s/ Rachael M. Smith
        Rachael M. Smith
        Trial Attorney
        U.S. E.E.O.C.
        21 South 5th Street, Suite 400
        Philadelphia, PA  19106
        (215) 440-2642
        RACHEL.SMITH@EEOC.GOV

PCH:md

cc:    Tanya Salgado, Esq.
        Debbie Sandler, Esq.
        Frank Noyes, Esq.