**EXHIBIT 2**

**EXHIBIT 2**

# ALLEGATIONS OF EMPLOYMENT DISCRIMINATION

Please immediately complete the entire form and return it to the U. S. Equal Employment Opportunity Commission ("EEOC"). Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). Incomplete responses will delay further processing of your charge by EEOC. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 300 days of the alleged discrimination.

**PERSONAL BACKGROUND INFORMATION:**

Name: Mr./Ms. William Spikes

Address: 63 Anderson Dr
Salem, N.J. 08079

Phone Number: (day) 856 935-0479  (night) (__)

Date of Birth: 10/30/45   Soc. Sec. #: 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   Race: Black

**RESPONDENT INFORMATION** (Employer, union, employment agency against whom the charge is being filed)

Respondent Name: Chase Manhattan / Initial Security

Address (If employer, location where you actually worked or sought employment - **If you worked out of your home, state that,** and give the full address of the company home office or headquarters; if union or employment agency, give address where you conducted business.)

802 Delware Ave    Gordon Ellis
Wilmington Delware

City/State/Zip Code _____ /County _____

Main Telephone Number (__)

Approximate total number of employees in entire organization  85,600

Type of business  Security

**DATE OF HARM** (last date any harm which you consider discriminatory happened): 12 Dec 02

**TYPE OF HARM** (the kind of discrimination that happened to you, for example, discharge, (denial) of hire, harassment):

equal pay

5/96

DEPOSITION EXHIBIT WS 10 CA 3-15-05
PENGAD-Bayonne, N.J.
EEOC0000000051

ALLEGATIONS OF DISCRIMINATION (p. 2)

**BASIS** Check the basis for your complaint (*the reason you believe the action was taken against you*).
( )race           ( )color              ( )religion           ( )sex
( )national origin    ( )age              ( )disability         ( )retaliation

Identify yourself in terms of the basis or bases you checked, for example, "I am black" or "I am a disabled person."

_____

_____

If you checked "retaliation," have you ever previously filed a charge with EEOC or another civil rights agency or complained to your employer about discrimination?  ( )yes ( )no

If yes, please explain: _____

_____

If none of the above bases applies, describe the reason you believe the action was taken against you:

_____

_____

_____

**EMPLOYMENT HISTORY** (for example, date of hire, position hired into, title of each position held, dates in each position; or date employment sought and position applied for):

_____

_____

_____

_____

_____

_____

_____

_____

EEOC0000000052

## ALLEGATIONS OF DISCRIMINATION (p.3)

**BRIEF EXPLANATION OF WHAT OCCURRED** Give a brief explanation of the events leading to the incidents of harm that occurred: when did it happen, who did it, how did it happen? Be sure to give names and titles of persons involved, incidents and dates of each incident, and any details which support your complaint.

I, William Spikes, was one of the senior security personnel, (amongst one of the first hired), at the Chase site when Initial Security, (formerly Servicelink), assumed the company building security contract from Wackenhut Security. This occurred on September 15, 1997.

There were, and still remain, three major components to the hierarchies of security as provided to Chase. The first tier of security at Chase is the "Rovers". A Rover's primary function is to run errands and attend various security calls as directed by the Console Operator. The second tier consists of the Console Operator. The Console Operator monitors the Security Console and oversees all security concerns of the site. He/She controls the security panels, remote entrances/exits, and keeps consistent surveillance of the site as to ensure all matters related to the provision and maintenance of security is of flawless perfection at all times. Console Operators report directly to the Site Commander. The Site Commander is the final tier and the Chief Operating Officer for the site.

At the time of the business take-over, the standard protocol required all newly hired personnel begin as Rovers. This ensured all new site employees learned each principle aspect of the building and surrounding areas. This practice familiarized new-hires with the physical site, on-site proto-calls, and with Chase employees. This training is intended to take a minimum of three days. Upon completion of this training, the new-hires could be given the opportunity of five working days of training at the Console, while learning it's functions. Later in their site career, an employee could move into the Site Commander position, if such a position was available.

After Initial assumed the site security, impartial training protocol became greatly compromised. Rather than all Chasse security new-hires completing the afore mentioned three tier steps of training, selected new-hires were immediately, without proper training, put into positions of authority, while others were put through normal paces. (While it is not unheard of for supervisory personnel to be hired outside of the existing employee base, it is highly unusual for individuals entirely unfamiliar with a site to be immediately placed in rolls or positions of authority over and before more skilled and experienced employees.) To make this newly exercised procedure even more suspect, the only persons allowed to surpass the previously practiced three-tier system were young Caucasian (white) persons. For example, Security Officers Ms. Angela Moody, Mr. William McDonald, and Mr. Mike Gafferty, were all freshly hired, new to the Chase site, and directly placed at the Console, a position of authority, while veteran officers were overlooked for this position. The Site Commander at this time was Mr. Joseph Garrison.

ALLEGATIONS OF DISCRIMINATION (.4)

BRIEF EXPLANATION     (CONTINUED)

Mr. Garrison was aware of the unusual, yet obvious new practices taking place and contracted the Initial head office and corporate headquarters to question the preferential treatment and was informed by the head office that there had been no misunderstandings and that these newly-hired persons were to indeed assume Console duties and supervisory authority over other employees. Mr. Garrison inquired with the head office as to what happened with the three-tier system and advised Initial's senior Management staff that he already had trained, experienced and certified Security Officers with Console experience ( Mr. Emmitt Latimer, Mr. Lewis Cephas, and myself, William Spikes.) Without addressing Mr. Garrison's question(s)/input and with little reply to his statement, Initial's home office informed Mr. Garrison only, "that was the way it had to be for the time".

Six months after this double standard practice was created, the Initial Security District Manager, Mr. Samuel Pratchett visited the 802 Delaware Avenue, Wilmington, Delaware site. I personally narrated and described to him all of my observations of unequal hiring/promotion practices and asked him if he was aware of the current situation. He answered that he was unaware of everything that was going on and was "going to look into it". I heard nothing from him. However, another white male guard appeared and applied for security employment, and again, was immediately placed into the second tier position without first being trained as a Rover.

The Chase/Initial Security also has an Administrative branch within the facility. This arm of the administration is primarily responsible for issuing security badges and identification cards to all Chase Personnel, temporary employees, outside contractors, and vendors. They also print out daily passes for all visitors or guests. This area was technically under the same Initial/Chase contract and also subject to the same three-tier protocol. The new "practice" was also in effect within this branch of security, as well. Upon my arrival, Mr. Jack Dukes was the Administrative Assistant who reported directly to Mr. Tom Durkin, the then Chase Security Manager. To assist and provide back up for Mr. Dukes, another white male was hired, Mr. Doug Young. No one within the Chase/Initial Management Staff, including Mr. Durkin, attempted to determine possible suitability or eligibility for assignment to the newly created Administrative Assistant position, nor were any veteran guards contacted..

Mr. Young remained employed for six months before he ended his security position with Chase. Prior to his leaving, he passed over his position to his long time friend and a fellow white security guard, Eric. Now, in addition to the impartial three-tier system, as well as, the prejudicial and discriminatory appointment of white new-hires by off-site senior management, we were also enduring job passing between friends, without the rightful opportunity for other employees to apply for these positions, or even being given notice of available openings. All of these "hand-overs" (job passing) took place with no Initial/Chase Security management intervention.

ALLEGATIONS OF DISCRIMINATION (.5)
BRIEF EXPLANATION    (CONTINUED)

In the midst of these white-employee-to-white employee hand-overs, Mr. Durkin left to pursue other interests. Mr. Pratcher was his replacement and assumed his position. At this point, I had finally been promoted to receive the position of Console Operator Manager. Soon after Mr. Pratcher's tenure began, the Administrative position once again, became vacant. Mr. Pratcher inquired with the Security Command station whether there might be a qualified guard to assume this role. As no experienced guard had the required computer skills, at that time, Mr. Pratcher interviewed and hired a new staff member from an outside placement firm. The new Assistant, Ms. Khristeen Brown was hired on her own merits of skill, knowledge, and qualifications. This was finally a hire that met with approval from the Security Staff, as it seemed to be brode a return to the three-tier system and to import being put upon experience and qualifications.

Other changes, (including an additional site), began to occur within the Chase/Initial Security Operation. Mr. Garrison retired from the position of Site Commander and was replaced by Mr. Jack Dukes. The Chase Company was relocating some of it's employees to a second site in Newark, De. Initial was contracted to provide security at the second Chase site, as well. Mr. Pratcher advised me that I had been appointed by Mr. Dukes as his replacement at Chase's 802 Delaware Avenue site as the Site Commander. Mr. Dukes was transferred to the second facility as it's Site Commander.

During this transitioning, Mr. Pratcher asked about my experience and qualifications. I gave him my full resume'. After reviewing it he stated, "I see you have an impressive background and a record of experience, even with Initial, itself." He then inquired, "why weren't you recommended for the promotion at the new site'? I replied by saying, "my experience with Initial/Chase has taught me that they don't recommend people for promotions due to skill or experience, but they simply recommend whomever they want to recommend". Mr. Pratcher apologized and cited his hectic schedule during the move of the Chase sites as a reason for his concentration being focused on current and new business, as opposed to his research on both current and old practices.

During the many personnel changes and the creation transition into a new Chase site, Initial Security was renegotiating it's contract with Chase to continue being their security provider in the Delaware region. The bottom-line agreement that was crucial to the security personnel, was that each of us, across the board, would be receiving a one-dollar an hour increase to our hourly wage. This would ensure that whichever site a security employee was assigned to work in there was no pay discrepancy. All positions, at either site, would be based on the same rate of pay.

In January, 2001, Mr. Pratcher left Chase as it's Security Manager to pursue other career oriented goals and interests with another employer. Mr. Robert Bagosy was appointed as Mr. Pratcher's replacement, which allowed for a whirlwind of the same previously practiced double standards to resurface. For example, the White Clay Commander earns more than the Commander at the 802 Delaware Ave. site; selected Rovers at the White Clay site are paid a greater salary than their

ALLEGATIONS OF DISCRIMINATION (n.6)
BRIEF EXPLANATION    (CONTINUED)

counterparts at 802 Delaware Avenue site (although each of these persons are working under the same contract). The unfair part of all of this is that the most experienced personnel are all working at the lower paid site, 802 Delaware Avenue. When occasion arises that a guard from the 802 Delaware Avenue site needs to fill in as a replacement for a guard at the White Clay site, he is being paid at the lower 802 Delaware Avenue pay rate for the same job. When the opposite occurs, however, and a guard from White Clay fills in as relief or a substitute for a guard at the 802 Delaware Avenue guard, he is being paid more for the same job.

The Initial/Chase Security Management Team has consistently accepted these unfair and prejudicial practices. I am certain they assume no responsibility for the negatively impacted and affected employees who have taken stock of how our Federally protected and instituted guidelines have been violated. Contrarily, they seem to be under the impression that we will overlook and ignore their unfair labor practices, racial and age discrimination. I close this, asking you for your assistance in righting these many injustices and creating anew, a work environment which is fair, unbiased, and impartial to all it's employees, regardless of race, creed, color, or age.

ALLEGATIONS OF DISCRIMINATION (p.7)

**COMPARATIVE DATA**     Was anyone else in a situation similar to yours? If so, what happened? Name all such similarly-situated individuals and describe their treatment, whether it was better or worse or the same as yours. Identify all named individuals in terms of the basis you selected, that is, by race, sex, or whatever basis applies in your case.

To make this newly exercised procedure even more suspect, the only persons allowed to surpass the previously practiced three-tier system were young Caucasian (white) persons. For example, Security Officers Ms. Angela Moody, Mr. William McDonald, and Mr. Mike Gafferty, were all freshly hired, new to the Chase site, and directly placed at the Console, a position of authority, while veteran officers were overlooked for this position. The Site Commander at this time was Mr. Joseph Garrison.

Mr. Garrison inquired with the head office as to what happened with the three-tier system and advised Initial's senior Management staff that he already had trained, experienced and certified Security Officers with Console experience ( Mr. Emmitt Latimer, Mr. Lewis Cephas, and myself, William Spikes.) Without addressing Mr. Garrison's question(s)/input and with little reply to his statement, Initial's home office informed Mr. Garrison only, "that was the way it had to be for the time".

To assist and provide back up for Mr. Dukes, another white male was hired, Mr. Doug Young. No one within the Chase/Initial Management Staff, including Mr. Durkin, attempted to determine possible suitability or eligibility for assignment to the newly created Administrative Assistant position, nor were any veteran guards contacted.

Mr. Robert Bagosy was appointed as Mr. Pratcher's replacement, which allowed for a whirlwind of the same previously practiced double standards to resurface. For example, the White Clay Commander earns more than the Commander at the 802 Delaware Ave. site; selected Rovers at the White Clay site are paid a greater salary than their counterparts at 802 Delaware Avenue site (although each of these persons are working under the same contract). The unfair part of all of this is that the most experienced personnel are all working at the lower paid site, 802 Delaware Avenue. When occasion arises that a guard from the 802 Delaware Avenue site needs to fill in as a replacement for a guard at the White Clay site, he is being paid at the lower 802 Delaware Avenue pay rate for the same job. When the opposite occurs, however, and a guard from White Clay fills in as relief or a substitute for a guard at the 802 Delaware Avenue guard, he is being paid more for the same job.

RESPONDENT'S EXPLANATION  Was an explanation given by the company for what happened?  If so, identify by name and title the person who provided the explanation.   Is there a policy and/or practice in the company regarding what happened?  Explain.

There were, and still remain, three major components to the hierarchies of security as provided to Chase.  The first tier of security at Chase is the "Rovers".  A Rover's primary function is to run errands and attend various security calls as directed by the Console Operator.  The second tier consists of the Console Operator.  The Console Operator monitors the Security Console and oversees all security concerns of the site.  He/She controls the security panels, remote entrances/exits, and keeps consistent surveillance of the site as to ensure all matters related to the provision and maintenance of security is of flawless perfection at all times.  Console Operators report directly to the Site Commander.  The Site Commander is the final tier and the Chief Operating Officer for the site.

At the time of the business take-over, the standard protocol required all newly hired personnel begin as Rovers.  This ensured all new site employees learned each principle aspect of the building and surrounding areas.  This practice familiarized new-hires with the physical site, on-site proto-calls, and with Chase employees.  This training is intended to take a minimum of three days.  Upon completion of this training, the new-hires could be given the opportunity of five working days of training at the Console, while learning it's functions.  Later in their site career, an employee could move into the Site Commander position, if such a position was available.

Mr. Garrison inquired with the head office as to what happened with the three-tier system and advised Initial's senior Management staff that he already had trained, experienced and certified Security Officers with Console experience ( Mr. Emmitt Latimer, Mr. Lewis Cephas, and myself, William Spikes.)  Without addressing Mr. Garrison's question(s)/input and with little reply to his statement, Initial's home office informed Mr. Garrison only, "that was the way it had to be for the time".

During this transitioning, Mr. Pratcher asked about my experience and qualifications.  I gave him my full resume'.  After reviewing it he stated, "I see you have an impressive background and a record of experience, even with Initial, itself."  He then inquired, "why weren't you recommended for the promotion at the new site'?  I replied by saying, "my experience with Initial/Chase has taught me that they don't recommend people for promotions due to skill or experience, but they simply recommend whomever they want to recommend".  Mr. Pratcher apologized and cited his hectic schedule during the move of the Chase sites as a reason for his concentration being focused on current and new business, as opposed to his research on both current and old practices.

MISCELLANEOUS INFORMATION:

_____
_____
_____
_____
_____
_____

I declare under penalty of perjury that I have read the above statements and that they are true and correct.

_____    3/11/03
Signature                          Date

EEOC0000000058

WITNESSES who you believe can provide relevant information regarding any of your allegations of discrimination. Give name, telephone number, address, if known, and a brieef explanation of what each person should be able to tell EEOC.

### CHASE SECURITY

| | |
|---|---|
| NAME: | JOSEPH GARRISON |
| ADDRESS: | 62 RUBY DRIVE |
| | CLAYMONT, DE 19703 |
| PHONE: | (302) 798 – 7131 |
| PAGER: | (302) 657 – 3815 |

### EMERGENCY NOTIFICATION

| | |
|---|---|
| NAME: | CANDI GARRISON |
| RELATIONSHIP: | WIFE |
| ADDRESS: | 62 RUBY DRIVE |
| | CLCAYMONT, DE 19703 |
| PHONE: | (302) 798 – 7131 |
| WORK: | (302) 762 – 7133 OR (302) 792 - 3916 |
| PAGER: | |

START DATE: OCTOBER 21, 1997

KERRIUM PRICE            (302) 429 – 6929

EMMITT LATTIMER

CONTACT PERSON Please provide the name of an individual at a different address who is in the local area and would know how to reach you.

| | |
|---|---|
| NAME: | JOSEPH GARRISON |
| ADDRESS: | 62 RUBY DRIVE |
| | CLAYMONT, DE 19703 |
| PHONE: | (302) 798 – 7131 |
| PAGER: | (302) 657 – 3815 |

ADDITIONAL INFORMATION

1. Choose one of the following:
   a) (X) I want to file a charge.
   b) ( ) I DO NOT WANT to file a charge at this time.
   c) ( ) I want to speak with an EEOC Representative before this is filed as a charge.

   I can be contacted at (area code/telephone number)_____
   SPIKES, WIILLIAM
   63 ANDERSON DRIVE
   SALEM, NJ    08079

   The best days and times to contact me are:_____

2. Indicate which of the following applies:
   A. ( X ) I have not filed a charge with any other agency concerning these same matters.

   B. ( ) I have filed a charge with the agency/ agencies named below concerning the same matters:
   Name of Agency_____
   Date Filed_____
   Agency docket number_____

   C. ( ) I am scheduled for an interview with the agency below:
   Name of Agency_____
   Date of Scheduled Interview_____
   Location of Interview_____
   Name of Interviewer_____

   D. ( ) I have received a Questionnaire to be completed from the agency named below:
   Name of Agency _____

   E. ( ) I mailed the Questionnaire back to the agency named above or about:_____

_____
Signature

3/11/03
Date

EEOC0000000060