**EXHIBIT 13**

**EXHIBIT 13**

September 10, 2002
Gordon Ellis, Bill Spikes, Patricia Browan

## Interview with Bill Spikes – Reit Management Supervisor

GE: The reason I called you in, we have had conversations in the past about problems at that site and things I needed you to do; man out of uniform on the midnight shift, officer reported by the client to be asleep under the desk with a pillow and blanket. Mr. Speiring was out of uniform, although after you left he could have changed.

BS: He was out of uniform. I talked to Wayne about it. Harry said he met the new rover and hadn't changed yet. I told Harry when you drive up you have to be dressed in uniform, even though Wayne told him, it still doesn't wash.

GE: At 5:00 he still wasn't in uniform.

BS: That happened Friday.

GE: Last night, the report I got.

BS: I left at 7:00 last night because me and Wayne were both there. That's when he was talking to Harry. I didn't see Harry. He didn't tell me he was out of uniform until Monday.

GE: We have also had telephone long distance charges.

BS: Yes. I have informed my people to get phone cards.

GE: Janet, from Philadelphia has called to complain about our services. Debbie was there last week and Bill Spikes wasn't on post.

BS: I had informed Adam I was on my way to get a prescription.

GE: You weren't on post. You were fixing your car in the garage.

BS: That was at 6 in the morning.

GE: It was after 8:00 in the morning. Diallo was holding over for you. He was out on the sidewalk. You were on duty in the garage fixing your car. It was after 8:00 and you were in the garage fixing your car.

BS: Yes

GE: The client called and said the contract is in jeopardy. We were supposed to get other contracts but that is not going to happen because of all these problems.

BS: I talked to the client about the 1001 building.

GE: There are a number of sites in Philadelphia and Delaware that we were supposed to get. That was the agreement that if we did a good job at your site then we would get other buildings. That was the agreement, but they are now under the impression we cannot provide the service and we are not being considered for the other buildings. That's a serious problem.

BS: Yes it is.

GE: I have lost confidence in Bill Spikes to be the supervisor. There have been all these incidents. They say you are having a tough time with the new computer system.

BS: No problem, never.

GE: They feel you have a problem.

BS: I train the new employees, how can I have a problem?

GE: I am not there, I am going by what the client says.

BS: No true Gordon. Be honest. If I did something then I am having a tough time, if I am not, don't lie on me.

GE: I am not there.

BS: That's stinking there. I have never had a tough time with the computer system.

GE: Take that out. We still have all these other problems.

BS: Yes. I feel I have been rectifying the phone thing. Everyone has been put on notice to get a phone card. I have one, everybody is supposed to have them. I know that was a pet peeve in the beginning.

GE: Diallo is an issue. He doesn't wear his uniform. We spoke about it and you were told it couldn't happen again and it keeps happening.

BS: I knew about Diallo twice, the third time I asked him, matter of fact, me and the client was there, Diallo is gone.

IS0000152

GE: He was there and it continued to happen when I told you it couldn't happen again. A month ago they found him barefoot. Bill, as the Site Supervisor it is your job to relieve him on post and not more than 30 days later the client calls and says the man is barefoot with a pillow and blanket, asleep under the desk.

BS: We never had that conversation.

GE: Yes we did.

BS: It was with Debbie.

GE: She was on the speaker phone with me.

BS: That was the time about him sleeping. I called you when Wayne informed me.

GE: That was the second conversation.

BS: No, that was with Debbie.

GE: No it was with me. If you remember, it wasn't a nice conversation, it was rather heated.

BS: Debbie said she informed Diallo. The next time I had the conversation with Wayne regarding Diallo in his sandals laying asleep at 6:10 a.m. I called down here. I called you and that was the Thursday before Labor Day. I asked Debbie I have to have somebody and she said okay we will get somebody in there. The weekend came up and I let Diallo work until Labor Day then I let him go. I was informed once by Debbie Baul and once by you and that's when the shit hit the fan.

GE: As the supervisor you can't wait for the client to come to us to inform us of a problem.

BS: I am out of the loop.

GE: It doesn't matter. You as the Site Supervisor should know your people. When you get there at 8:00 you see Diallo. He should be in full uniform and on post. That has not happened.

BS: But Lola is there.

GE: That's not proper relief. Two people are supposed to be on post.

BS: I have no problem with the computer.

GE: That's what I've been told and I can't speak for another person.

BS: I know why.

GE: Why?

BS: Because of what I am dealing with. I am dealing with a schizophrenic person.

GE: Who, Wayne?

BS: Wayne is crazy. I had a conversation with Wayne before I came down here. Wayne said I made the statement to the night supervisor. I represent Initial, not the night supervisor. What he is doing and what he has been doing ever since I have been there. He wants to be security and management. He is dictating. He tells me one thing and then tells you another. His own people look at him that way. He is not going to be there much longer. I try Wayne if we have a problem. Wayne says okay. Don't undermine my position if your job is to undermine me. I thought we were supposed to be a team. Don't go behind my back. This computer, I sat there with the man with the system and he taught me to badge and he said we don't want you people to badge, it costs too much money. The only thing we were supposed to do is respond to the alarms. I never had a problem with the system. We have a problem with communications.

GE: I understand.

BS: In your experience you haven't worked with someone like Wayne. You are either corporate or not. This man is a Harley Davidson beer-drinking wantabe. We are having a people problem.

GE: On the computer issue it is possible. But the Diallo, uniform, phone issues, relief, these are our issues.

BS: Yes.

GE: Let's put the computer issue aside. We still have other issues.

BS: Yes.

GE: Like I said earlier, I have lost confidence in Bill Spikes to be the supervisor and I need to make a change.

BS: Okay, alright.

GE: I don't have a spot to put you in.

BS: Okay.

GE: I never enjoy these conversations.

BS: It's the job.

GE: It is in the company's best interest to make a change. Do not go back to the site or talk to the client.

BS: I need my stuff.

GE: I will make arrangements with someone to be there with you so you can pick up your belongings.

BS: Fine.

GE: You have been on this side.

BS: No, never had.

GE: I will have Debbie make arrangements for Chip or Anthony to meet you.

BS: Fine.

GE: Do you have any questions?

BS: For what, Gordon, it is neither here nor there.

IS0000155

**EXHIBIT 14**

**EXHIBIT 14**

# CLAIMANT/EMPLOYER SEPARATION STATEMENT

**LIABLE STATE: DELAWARE**

## PART I. CLAIMANT'S STATEMENT

1. NAME: W H Spikes
2. As worked under (if different): _____
3. SOCIAL SECURITY NUMBER: 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
   OTHER SSA # WORKED UNDER: _____

4. ENTER NAME AND ADDRESS OF EMPLOYER (Include Street or Box No., City, State, Zip Code):

   Initial Security
   202 University Plaza
   Newark, DE 19098

   Lack of Work

   **NOTICE TO CLAIMANT:** Your employer will receive a copy of this form.

5. TYPE OF WORK: Security Guard
6. LAST PERIOD OF WORK: BEGAN 09/11/97  ENDED 09/10/02
7. HOURS OF WORK: from 7:00 a.m. To 3:00 p.m.
8. FINAL RATE OF PAY: $12.00 per hour
9. NO. OF DAYS PER WEEK: _____
10. GROSS EARNINGS FOR LAST PERIOD OF WORK (item 6): _____
11. IMMEDIATE SUPERVISOR (Name): _____ (Title): _____

12. I ☐ am  ☐ am not the major support of my household.
13. I am no longer employed with this employer because:  ☐ lack of work  ☐ quit  ☐ discharged by _____
14. I ☐ quit  ☐ was discharged because: (give full details) _____

15. What did you do to resolve the problem? _____

16. CERTIFICATION: I have made this statement for the purpose of obtaining unemployment insurance, knowing that the law provides penalties for false statements or withholding of facts.

SIGNATURE OF CLAIMANT: _____
DATE (Mo., Day, Yr.): _____

**CLAIMANT: DO NOT WRITE BELOW THIS LINE**

17. MAILING DATE: 9-30-02
18. AGENT STATE REP.: A. Inglis-Phillips
19. AGENT STATE FIPS: 10
20. L.O. NO.: 0000

**NOTICE TO EMPLOYER:** The individual named above has filed a claim for unemployment benefits against the State marked below. You, as an interested employer, are entitled to notification of filing. If you desire an appointment to appear in person, contact your local employment office. Please complete the reverse side and include facts known to you, which may affect this claimant's eligibility for benefits. Your reply MUST BE ☒ received ☐ mailed ☒ postmarked within 7 ☐ calendar ☒ work days of the mailing date shown in item 17 above, to the address identified below.

MAIL REPLY TO:

DIVISION OF UNEMPLOYMENT INSURANCE
Interstate Liable Unit
Delaware Department of Labor
P.O. Box 9952
Wilmington, DE 19809-0952
Fax # 302-761-6654

State Name and Code: _____

IB-3 (page 1)

**EXHIBIT 15**

**EXHIBIT 15**

Spikes

DATE: 9/9/97

INTERVIEW QUESTIONS

(✓) Are you over 20 years of age? Yes.
(✓) Do you have dependable transportation? Yes.
(✓) Do you have a valid driver's license? Yes # 643217
(✓) Do you have a phone? Yes  Is it yours? Yes  # 608-935-0479
( ) Can you work flexible hours? open.
      Saturday/Sunday? open
(✓) There is a $49 cash fee for a license for the DSP. In order to obtain a license you must have no criminal record. (No misdemeanors, felonies, arrests - all traffic and parking tickets paid.) We provide forms for Dover. They do not accept credit cards or checks, CASH ONLY.
      (✓) Currently has license - Expiration date 10/30/99.
(✗) In order to perform the duties of a security guard, you must be able to walk distances, climb steps, etc. Can you meet these requirements? Yes
(✓) Servicelink does a pre-employment drug test? Would you submit to this test? Yes.
(✓) Discuss grooming - no beards or earrings. Hair cut clean and neat.
(✓) Discuss rates of pay - each site has different pay rates. Rates adjusted per site.
(✓) Discuss work and attendance - 4 hour call-off policy.
(✓) While in training you will be paid $5.00 per hour.
(✓) 8-hour orientation class - Non-paid - Condition of employment.
(✓) Vacation policy. 1 week for 1 year service for fulltime employees.
(✓) Benefits - Depends upon site for fulltime employees.
(✓) Are you still interested in being hired if there is an opening?

NOTES: _____

_____           _____
Applicant Signature                  Interviewer Signature

7/97

**EXHIBIT 16**

**EXHIBIT 16**

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 170A300860 |

DDOL Labor Law Enforcement Section _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) Mr. William Spikes | HOME TELEPHONE (Include Area Code) (856) 935-0479 | |
|---|---|---|
| STREET ADDRESS 63 Anderson Drive, | CITY, STATE AND ZIP CODE Salem, NJ 08079 | DATE OF BIRTH 10/03/1945 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME Initial Security | NUMBER OF EMPLOYEES, MEMBERS Cat D (501 +) | TELEPHONE (Include Area Code) (302) 655-8368 |
|---|---|---|
| STREET ADDRESS 802 Delaware Avenue, | CITY, STATE AND ZIP CODE Wilmington, DE 19801 | COUNTY 003 |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify) | EARLIEST 01/01/2000   LATEST 03/11/2003<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. On September 10, 1997, Respondent hired me as a Security Officer at its Wilmington site location. On April 2000, Respondent promoted me to Site Commander at $11.50 per hour. Respondent had a contract with Chase/JP Morgan.

II. Mr. Jack Dukes (White) was also a Site Commander at the Newark, DE site. He was paid at about $17.50 per hour. Mr. Dukes started his employment with Respondent at the same time that I did. Under the contract between Respondent and Chase/JP Morgan, Mr. Dukes and I were to be paid the same rate. Respondent also gave Mr. Dukes bonuses that I did not get. I complained about the unequal pay. On September 10, 2002, Respondent terminated my employment.

III. I believe that Respondent discriminated against me because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII) when it did not pay me the same rate as Mr. Jack Dukes and terminated my employment.

DEPOSITION EXHIBIT WS 12 a 3/15/05

MAR 2003 Received EEOC - Philadelphia District Office

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| 3/11/03<br>Date   Charging Party (Signature) | |

EEOC FORM 5 (Rev. 07/99)                                FILE COPY   EE0C0000000045

# EXHIBIT 17

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1

Not Reported in F.Supp., 1992 WL 236285, 59 Fair Empl.Prac.Cas. (BNA) 1521
**(Cite as: Not Reported in F.Supp.)**

H
Not Reported in F.Supp., 1992 WL 236285, 59 Fair Empl.Prac.Cas. (BNA) 1521
Briefs and Other Related Documents

United States District Court, E.D. Pennsylvania.
Robert M. COOPER
v.
SOUTHWARK METAL COMPANY, MORTON SPIEGAL, and WILLIAM SPIEGAL
Civ. A. No. 91-6961.

Sept. 11, 1992.

Robert M. Cooper, pro se.
Francis J. Deasey, James G. Sheehan, U.S. Atty's Office, PHILADELPHIA, PA 19106 USA Richard Mentzinger, Jr., Office of the U.S. Atty., Philadelphia, Pa., for defendants.

*MEMORANDUM*

NEWCOMER, District Judge.
*1 Before the court is Defendants' Rule 41(b) Motion For Involuntary Dismissal. For the following reasons, I will grant said motion.

I. *Discussion.*

In considering whether to grant a Rule 41(b) motion for involuntary dismissal, the evidence must be read in the light most favorable to the plaintiff as well as all reasonable inferences arising from the evidence. Title VII of the Civil Rights Act of 1964, as amended, provides that:
> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race....

42 U.S.C. § 2000e-2(a)(1). In this case, plaintiff has alleged that defendant committed disparate treatment race discrimination, in violation of Title VII, by their different wage rates for similar jobs performed by both white and black employees.

If the plaintiff establishes a prima facia case of disparate treatment race discrimination (a burden of *proof* ), the defendant/employer must articulate a legitimate nondiscriminatory reason for its actions (a burden of *production* ). *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie case of race discrimination merely creates a rebuttable presumption that the employer unlawfully discriminated; if the employer articulates a legitimate non-discriminatory reason, the presumption of discrimination is rebutted and " drops from the case." *Texas Dept. Community Affairs v. Burdine,* 450 U.S. 248, 254-55 & n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer satisfies its burden of *production,* the plaintiff must *prove* that the asserted reason is a pretext for impermissible discrimination in order to prevail. A showing of any "pretext" will not suffice: plaintiff must establish that the employer's articulated reason was a pretext for accomplishing a racially discriminatory purpose. In a disparate treatment race discrimination case, plaintiff *always* bears the burden of proving that race was the determinative factor in the employer's wage payment decision, i.e., plaintiff must prove that defendant acted with a discriminatory purpose.

A prima facie case of race-based discrimination is proven by showing (1) plaintiff is a member of a protected class, (2) he was qualified for the job, and (3) he was paid at a lower level than similarly situated white employees. *See, e.g., McDonnell Douglas, supra; Marks v. Prattco, Inc.,* 607 F.2d 1153, 1155 (5th Cir.1979).

Plaintiff failed to prove any causal connection between his race and his pay. There is *no*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                       Page 2

Not Reported in F.Supp., 1992 WL 236285, 59 Fair Empl.Prac.Cas. (BNA) 1521
**(Cite as: Not Reported in F.Supp.)**

evidence, beyond plaintiff's visceral perceptions of discrimination, that race motivated defendants' decision. As one court has noted:

> The fact of discrimination alone does not establish the illegality of a challenged action. There must be a causal nexus with a disciplinary action in question, so that the challenged discipline would not have been received by the employee but for the improper conduct of the employer ... 'To permit such an action, without clear proof of a link between the plaintiff's protected status and the adverse employment decision, would cause Title VII to become a vehicle for providing compensation following an adverse employment decision to every person in a protected class....'

*2 *Wright v. Allis-Chalmers, Inc.,* 496 F.Supp. 349, 352 (N.D.Ala.1980).

Although Plaintiff did establish a prima facie case of disparate treatment race discrimination, defendant articulated a legitimate, non-discriminatory reason for the pay differential. Defendant satisfied its burden of articulation/production, has dispelled any rebuttable presumption of discrimination, and has shifted to plaintiff the burden of proving (not merely producing evidence of) the pretextual nature of the articulated reason. Plaintiff has failed to demonstrate that defendant's articulated reasons were pretextual.

Plaintiff did not prove discrimination based on race. The evidence is entirely to the contrary. The facts as found by this court are as follows:

1. Plaintiff was hired by defendant as a helper to Mr. James Breen.

2. Mr. Breen, a white male formerly employed by the company, had been with the company for a period of time before plaintiff, and after a period of absence from the company, Mr. Breen was rehired at a higher rate than plaintiff. Plaintiff is approximately 30 years younger than Mr. Breen.

3. When plaintiff was hired, he received $5.00 per hour. Plaintiff, who is still employed by the defendant company, has subsequently received a series of raises as have all other similarly situated employees.

4. There are black males in the company that earn more than white males. There was no evidence presented to suggest that the pay rate was in any manner related to race.

5. Plaintiff's two witnesses stated that they did not know of any discrimination by the defendant company against the plaintiff. Other than the alleged pay difference with Mr. Breen, plaintiff proffered no evidence even suggesting race-based treatment.

6. Other than the pay difference with the older and more experienced Mr. Breen, plaintiff failed to show any other possible examples of disparate treatment.

In deciding whether a plaintiff is a victim of race discrimination in employment, the court must consider whether the proffered evidence supports the alleged disparate treatment. The Court may determine these issues as a matter of law where reasonable men could not differ as to the conclusion. I am of the opinion that this is such a case. It is clear from the entirety of plaintiff's evidence that his claim of race-based discrimination has not been substantiated to any degree.

II. *Conclusion.*

Plaintiff has failed to establish that defendant purposefully discriminated against him on account of his race. The evidence established that defendant did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* in paying plaintiff his particular wage. THEREFORE, this action will be dismissed on the merits and judgment will be entered in favor of all the defendants and against the plaintiff.

An appropriate Order follows.

ORDER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1992 WL 236285, 59 Fair Empl.Prac.Cas. (BNA) 1521
**(Cite as: Not Reported in F.Supp.)**

AND NOW, this 10th day of September, 1992, upon consideration of Defendants' Rule 41(b) Motion For Involuntary Dismissal, and consistent with the foregoing memorandum opinion, it is hereby ORDERED that said motion is GRANTED.

**\*3** At trial, defense moved to amend the Rule 41(b) motion to include all named defendants. The motion to amend was granted and this Order for involuntary dismissal is applicable to all defendants. This action is dismissed on the merits and judgment is entered in favor of the defendants and against the plaintiff.

AND IT IS SO ORDERED.

E.D.Pa.,1992.
Cooper v. Southwark Metal Co.
Not Reported in F.Supp., 1992 WL 236285, 59 Fair Empl.Prac.Cas. (BNA) 1521

Briefs and Other Related Documents (Back to top)

• 2:91cv06961 (Docket) (Nov. 07, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.