**EXHIBIT 18**

**EXHIBIT 18**

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Not Reported in F.Supp.2d, 2002 WL 31194220
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Prince HARDEN,
v.
SOUTHWARK METAL MANUFACTURING CO.
No. CIV.A.99-4666.

Oct. 2, 2002.

African-American former employee brought action against former employer, alleging race discrimination in violation of Title VII and the Pennsylvania Human Rights Act (PHRA). Employer moved for summary judgment. The District Court , Hutton, J., held that: (1) fact question existed as to why employee was terminated after accumulating only 10 late-to-work points; (2) employee failed to show that employer's proffered reason for denying employee's request for alternate start time was pretext for race discrimination; (3) employee failed to establish prima facie claims that employer discriminated in administration of vacation policy and in paying employees; (4) employee failed to demonstrate that minority employees were treated any differently than white employees with regard to implementation of zero drug tolerance policy; (5) employee failed to establish prima facie claim of race discrimination arising from employer's alleged intentional practice of staffing maintenance with white employees who were paid more; and (6) fact question existed as to whether proffered reason for fact that department which endured harshest labor conditions was majority minority employees was pretext for race discrimination.

Motion granted in part and denied in part.

West Headnotes

[1] Civil Rights 78 €=1122
78k1122 Most Cited Cases
(Formerly 78k144)
African-American employee established that he was object of adverse employment action, as required to establish prima facie case wrongful termination in violation of Title VII, although employee's replacement was a minority, where employee showed that employer had a continuing need for someone to perform the same work after employee left. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 78 €=1122
78k1122 Most Cited Cases
(Formerly 78k144)
African-American employer's proffered explanation for termination of employee, that employee failed to comply with company-wide policy regarding absenteeism and tardiness, was legitimate and nondiscriminatory, on employee's Title VII wrongful termination claim; employer relied on production employees, including plaintiff employee, to be on time, so the shipping department could do its work. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Federal Civil Procedure 170A €=2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact existed as to why African-American employee was terminated after accumulating only 10 late-to-work points, rather than the 25 the employer's absenteeism policy required, precluding summary judgment on employee's Title VII wrongful termination claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights 78 €=1120
78k1120 Most Cited Cases
(Formerly 78k142)
African-American employee established prima facie claim that employer's refusal to permit employee to start work at an alternate time was product of race discrimination in violation of Title VII; employee alleged that he applied for an alternate start time

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

and that his application was denied, although another employee was allowed to maintain an alternate start time. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[5] Civil Rights 78 ⇌1120
78k1120 Most Cited Cases
(Formerly 78k142)
African-American employer proffered legitimate, nondiscriminatory reason for denial of employee's re-application for alternate start time, on employee's Title VII race discrimination claim; employer claimed that all employees were required to resubmit request forms, justifying their alternate start time, by outlining hardships that prevented them from arriving at same time as other employees. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[6] Civil Rights 78 ⇌1137
78k1137 Most Cited Cases
(Formerly 78k153)
African-American employee failed to show that employer's proffered reason for denying employee's request for alternate start time was pretext for discrimination; employee admitted he did not believe the change in start time was racially motivated, the only employees ever permitted to begin work at alternate time were racial minorities, and the only person permitted to maintain alternate start time was a minority with child care issues. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[7] Civil Rights 78 ⇌1545
78k1545 Most Cited Cases
(Formerly 78k383)
African-American employee failed to establish prima facie claim that employer administered vacation policy in a racially disparate manner; although employee was a member of a protected class, employee supported claim with nothing more than unsubstantiated rumor regarding a Caucasian employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[8] Civil Rights 78 ⇌1547
78k1547 Most Cited Cases
(Formerly 78k385)

African-American employee's uncorroborated deposition testimony that employer paid white employees more than equally qualified minority employees solely on basis of race failed to establish prima facie claim of wage discrimination under Title VII; employer put forth company policy and affidavits, rate of pay was based on collective bargaining agreement (CBA) between employees and employer, and union officials and other employees testified that wage increases were not related to race. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[9] Civil Rights 78 ⇌1137
78k1137 Most Cited Cases
(Formerly 78k153)

Civil Rights 78 ⇌1547
78k1547 Most Cited Cases
(Formerly 78k385)
Employer's reliance on collective bargaining agreement (CBA) terms to determine rate of pay for employees was not pretext for race discrimination, in violation of Title VII, on African-American employee's unequal compensation claim; employee relied upon rumor of a white truck driver who was paid more without offering specifics as to identity of driver, employee had never filed union grievance on the issue, and nothing showed that employee and the unidentified white driver were equally qualified. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[10] Civil Rights 78 ⇌1545
78k1545 Most Cited Cases
(Formerly 78k383)
African-American employee's conclusory deposition testimony, regarding alleged instance when he was required to use a tarp to cover his truck, while a white employee had complained of similar problem and was given a covered truck, would be insufficient to establish prima facie racially disparate working conditions claim of African-American employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[11] Civil Rights 78 ⇌1138
78k1138 Most Cited Cases
(Formerly 78k153)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3

Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

African-American employee established prima facie claim that employer implemented drug policy in racially discriminatory manner; employee noted discrepancies between the way his mandatory drug treatment was handled when compared to the manner in which a white employee's treatment was handled. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[12] **Civil Rights 78** ☞1120
78k1120 Most Cited Cases
(Formerly 78k142)
Employer had a legitimate, nondiscriminatory interest in maintaining zero tolerance drug policy, on African-American's claim that policy was implemented in racially discriminatory manner; employer required employees to operate large vehicles. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[13] **Civil Rights 78** ☞1138
78k1138 Most Cited Cases
(Formerly 78k153)
African-American employee failed to demonstrate that minority employees were treated any differently than white employees, with regard to implementation of employer's zero tolerance drug policy; although a white employee was allowed to return to work one week after testing positive for drugs and that employee attended a different treatment facility, African-American employee chose the facility he attended, and the facilities the employees attended, rather than employer, determined when employees could return to work. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[14] **Civil Rights 78** ☞1138
78k1138 Most Cited Cases
(Formerly 78k153)
African-American employee failed to establish prima facie claim that he was treated negatively by employer, in change of assignments, vis-a-vis similarly situated individuals who were not in protected class, although employee subjectively believed discrimination existed; employee was subject to collective bargaining agreement (CBA) which was negotiated by union and employer, and union president attested that all bargaining unit employees were classified as "laborers," and that no classification differences existed among union employees, other than that they worked in different departments. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[15] **Civil Rights 78** ☞1135
78k1135 Most Cited Cases
(Formerly 78k148)

**Civil Rights 78** ☞1136
78k1136 Most Cited Cases
(Formerly 78k152)
African-American employee failed to establish prima facie claim of race discrimination under Title VII, arising from employer's alleged intentional practice of staffing maintenance with white employees who were to be paid higher than minority employees for the same work; employee never applied for or requested position in maintenance department, employee admitted he was not qualified to work in maintenance department, and maintenance employees were paid more due to the higher degree of skill required. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[16] **Civil Rights 78** ☞1138
78k1138 Most Cited Cases
(Formerly 78k153)
African-American employee established prima facie case on Title VII disparate treatment claim that employer assigned only minorities to department which endured harshest labor conditions; majority of workers in the department were minorities. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[17] **Civil Rights 78** ☞1138
78k1138 Most Cited Cases
(Formerly 78k153)
Employer established legitimate, non-discriminatory reason for fact that majority of workers in department which endured the harshest labor conditions were minority employees, in that the employer hired approximately 80% minorities, and that departments should reflect that proportional composition, in African-American employee's Title VII action alleging disparate treatment. Civil Rights Act of 1964, § 701 et seq.,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4

Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

42 U.S.C.A. § 2000e et seq.

**[18] Federal Civil Procedure 170A ⇌2497.1**
170Ak2497.1 Most Cited Cases
Genuine issue of material fact existed as to whether employer's proffered reason for racial composition of department which endured harshest labor conditions, that majority of department was minorities because approximately 80% of employees in company were minorities and department would reflect that proportional composition, was pretext for race discrimination, precluding summary judgment on African-American employee's race discrimination claim against employer. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*MEMORANDUM AND ORDER*

HUTTON, J.
*1 Presently before the Court are Defendant's Motion For Summary Judgment (Docket No. 28), Plaintiff's Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 29), and Defendant's Sur-Reply Brief To Plaintiff's Answer to Defendant's Motion for Summary Judgment (Docket No. 30).

I. *BACKGROUND*

The Plaintiff, Prince Harden, was employed by the Defendant, Southwark Metal Manufacturing Company, from May of 1987 until his employment was terminated in September of 1998. Classified as a "laborer," Plaintiff's jobs varied from a driving a truck to working in the Pipe Department, which entailed unloading and stacking pipe metal. At all times Plaintiff was a bargaining unit employee, represented by the Laborer's Union of North America Local No. 57. Roughly 80% of the bargaining unit employees represented by Local 57 are minorities.

On February 1, 1998, Defendant Southwark changed its starting time of most employees from 8:00 a.m to 7:00 a.m. for operational reasons. Upon notifying its employees of this change, Defendant permitted any employee to submit a "request" to remain at the 8:00 a.m. start time for justifiable reasons. Plaintiff applied for and received an "alternate" start time of 8:00 a.m. because of car troubles and transportation difficulties.

On August 19, 1998, Defendant, via Frederick Tweed, requested that every employee with an alternate start time reestablish the reasons preventing such employees from starting work at 7:00 a.m. Plaintiff submitted a Xerox copy of his original request, however, this renewed request was denied. Defendant reasoned that Plaintiff had time to fix any car troubles. Moreover, Frederick Tweed outlined for Plaintiff an available public transportation route which would allow Plaintiff to arrive at 7:00 a.m. with the rest of the employees.

Despite having his start time change to 7:00 a.m., Plaintiff refused to show up on time. Upon repeatedly and intentionally arriving late, Plaintiff was terminated according to company policy.

After his termination, the Plaintiff filed a racial discrimination claim with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. After receiving a Notice of Right to Sue, the Plaintiff filed his complaint in this Court alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII) and Section 5 of the Pennsylvania Human Relations Act (PHRA). On December 15, 1999, Plaintiff's claims for intentional infliction of emotional distress and breach of contract were dismissed with prejudice. The parties proceeded to conduct discovery pursuant to the Court's scheduling order.

On October 23, 2000, Defendant filed a Motion for Summary Judgment which was subsequently denied on the grounds that Plaintiff submitted an affidavit newly asserting that he was fired under the wrong termination policy, thus creating a genuine issue of material fact. The court issued a new scheduling order so as to allow Defendant to question Plaintiff on this matter. After deposing Plaintiff again, Defendant once again moves for Summary Judgment.

The Defendant attacks the following claims made

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 5

Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

by the Plaintiff both in his amended complaint and through discovery: (1) the Plaintiff was terminated by the Defendant based upon racial discrimination; (2) the Defendant was denied his alternate start time based upon his race; (3) the Defendant treated white employees more favorably with regard to vacation time; (4) the Defendant had a systematic pattern and practice of paying Caucasian employees more than minority employees who were equally qualified; (5) the Defendant treated complaints of dangerous conditions differently depending upon whether they were made by a white employee or a minority; (6) the Defendant's drug policy was administered in a discriminatory manner; (7) the Defendant changed the job assignments of minority employees without changing their rate of pay and did not require white employees to change assignments; (8) the Defendant staffed its maintenance department almost exclusively with white employees; (9) the Defendant would only assign minority employees to the Pipe Department which endured the harshest working conditions; (10) the Defendant subjected Plaintiff to racial harassment and retaliatory discrimination; and (11) Plaintiff is entitled to compensatory damages.

## II. LEGAL STANDARD

### 1. Summary Judgment

*2 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *See id.*

When determining if a material fact exists, all evidence must be viewed in the light most favorable to the nonmoving party. *Kober v. Mack Truck, Inc.,* No.CIV.A 94-2120, 1994 WL 702659 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1982)). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *See id.*

The party moving for summary judgment has the initial burden of showing the basis for its motion, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), whereupon the burden shifts to the nonmovant to sufficiently establish any essential element to that party's case. *Tenthoff v. McGraw-Hill, Inc.,* 808 F.Supp. 403, 405 (E.D.Pa.1992) (citing *Celotex Corp.,* 477 U.S. at 322-23)). It is incumbent upon the nonmoving party to present evidence beyond mere pleadings, through affidavits, deposition or admissions on file. *Tenthoff,* 808 F.Supp. at 405. A party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, *see Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir.1992), as summary judgment may be granted if the evidence presented is " 'merely colorable' or is 'not significantly probative.' " *Tenthoff,* 808 F.Supp. at 405 (citing *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987)).

### 2. Title VII and PHRA

*3 Claims under Title VII and the PHRA are governed by the same legal standard. *See Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 409 (3d Cir.1999). Within the context of these claims, surviving a summary judgment motion requires Plaintiff to first establish a prima facie case of discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993). A plaintiff will meet his burden for a prima facie case if he establishes that: (1) he is a member of a protected class, (2) that he was qualified for the job he was performing, (3) that he was satisfying the normal requirements of the job and (4) that he was the object of adverse action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 6
Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

*McCann v. Delaware River Port Authority,* 548 F.Supp. 1206, 1214 (E.D.Pa.1982) (citing *Whack v. Peabody & Wind Engineering Co.,* 452 F.Supp. 1369, 1371 (E.D.Pa.1978)); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Upon establishing his prima facie case, Plaintiff creates a presumption that the employer unlawfully discriminated. *See Hicks,* 509 U.S. at 506. This permissible inference of discrimination shifts the burden to the defendant to produce a legitimate, nondiscriminatory explanation to rebut the plaintiff's prima facie case. *Id.* at 507. Notably, while the prima facie presumption shifts the burden of production to the defendant, the burden of persuasion remains at all times with the plaintiff. *Id.* Moreover, while the defendant must attest to its reasons for the adverse action, defendant does not have to prove that it was actually motivated by those proffered reasons. *McCann,* 548 F.Supp. at 1214 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981)).

"If the defendant carries [its] burden of production, the presumption raised by the prima facie case is rebutted, and drops from the case." *Hicks,* 509 U.S. at 507 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1094-95 n. 10). Thereafter, the burden of production once again rests with the Plaintiff to establish by a preponderance standard that the explanation proffered by the employer is, in actuality, a pretext for discrimination. *McCann,* 548 F.Supp. at 1214 (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). In a disparate treatment case, such as the instant case, the Plaintiff not only has the burden of showing disparate treatment, but also that such treatment was the result of purposeful or intentional discrimination. *McCann,* 548 F.Supp. at 1214 (citing *Smithers v. Bailar,* 629 F.2d 892 (3d Cir.1980). *See also Hicks,* 509 U.S. at 519 (holding that "[i]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination") (emphasis in original).

In a Title VII action, a plaintiff who has already established a prima facie case may defeat summary judgment either by "(I) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). The quantum of evidence required to rebut defendant's legitimate, nondiscriminatory reasons for the purpose of surviving summary judgment must enable a factfinder to reasonably infer that "*each* of the employer's proffered non-discriminatory reasons ... was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.*

### III. DISCUSSION

#### 1. *Wrongful Termination*

*4 [1] Plaintiff first alleges racial discrimination with regard to his termination. *See* Amended Comp. Para. 20, 28(f). To establish a prima facie case of wrongful termination Plaintiff must prove by a preponderance that: (1) he is a member of a protected class, (2) he was qualified for the job he was performing, (3) he was satisfying the normal requirements of the job, and (4) that he was the object of adverse action. *See McCann,* 548 F.Supp. at 1214. Defendant asserts that Plaintiff failed to prove the fourth element of his prima facie case. In support of this proposition, defense cites the fact that upon termination, Plaintiff was replaced by another minority. *See* Mot. for Sum. J. p. 10. The Third Circuit has found, however, in the context of gender discrimination, that " 'while the attributes of a successor employee may have evidentiary force in a particular case, a complainant can satisfy the fourth prong of her prima [facie] case by showing that, as here, the employer had a continuing need for someone to perform the same work after the complainant left.' " *See Pivirotto v. Innovative Systems,* 191 F.3d 344, 354 (quoting *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 155 (1st Cir.1990)). Consequently, the Court finds that in the instant case, the Plaintiff has made out a prima facie case regarding his termination.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

[2] The Court must next assess whether Defendant sustained its burden of producing a legitimate, nondiscriminatory explanation for Plaintiff's termination. Defendant Southwark puts forth its company-wide policy regarding absenteeism and tardiness (Exhibit "D"), the violation of which is grounds for termination. FN1 The reliability and promptness of employees is a valid concern for businesses. *See, e.g, McCann*, 548 F.Supp. at 1214-15; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir.1992) (holding that "reliability and promptness are important considerations in maintaining a workforce"). In the instant case, Defendant's business relies on its 7:00 a.m. production department workers to be on time, as its shipping department employees cannot do their work until production is finished. *See* Deft. Mot. for Sum. J. p. 12 n.4. Defendant, therefore, has met its burden of production.

> FN1. This same issue was addressed in Defendant's first summary judgment. Plaintiff admitted in his first deposition that the termination policy dated December 10, 1997 was in effect at the time of his own termination. This Court denied the motion for summary judgment because subsequent to his deposition, Plaintiff filed an affidavit alleging for the first time that he was terminated under the wrong policy, thus creating an issue of material fact. Defendant re-deposed defendant, in which defendant admitted again that the termination policy in effect at the time of his own termination was the December 10, 1997 policy. *See Depo.* page 26.

[3] Plaintiff must now show that Defendant's explanation is merely a pretext for discrimination. Plaintiff asserts that he was terminated under the wrong policy because of his race. Defendant announced in July 1998, that effective September 1, 1998, a new absentee policy would be implemented. *See* Pl. Ext. "5." This new policy was considerably more liberal that the prior policy. FN2 Plaintiff was terminated after ten late arrivals which, though proper according to the original policy, was very premature under the new company policy.

> FN2. The original policy, dated December 10, 1997, stated that ten "latenesses" in a twelve month period would result in termination. *See* Harden 11. For purposes of this policy "late" was defined as reporting to work more than 5 minutes after the start of the employee's shift. *Id.* The September 1, 1998 policy operated under a point system, where absences were counted as two points and lateness worth one point. *See* Pl. Ext. 5. Points were totaled on a rolling twelve month basis, with the repercussions including termination at twenty-five points. For the purposes of this policy "lateness" was defined as arriving more than one minute after the start of a shift.

*5 Defendant relies on Plaintiff's admission in his second deposition that he thought that the December 1997 policy was in effect when he was terminated. *See* Deft. Ext. "L" pp. 25-26. Plaintiff also admitted that he had accumulated enough " latenesses" under this policy to warrant termination. *See* Deft. Ext. "D" p. 26. While Defendant's subjective belief concerning which policy was in effect may lend itself to an effective cross-examination, it does not weigh heavily in this motion for summary judgment. Regardless of what Plaintiff *subjectively believes* about which policy was in effect upon his termination, the *objective fact* remains that Defendant had instituted a new company policy on September 1, 1998. *See* Pl. Ext. "5." Defendant accumulated his lateness points subsequent to this effective date. As such, there is a genuine issue of material fact as to why the Plaintiff was terminated after he only accumulated ten points, as opposed to twenty-five points, as required under the new policy. Accordingly, Defendant's Motion for Summary Judgment in regard to the wrongful termination claim is denied.

*2. Alternate Start Time*

[4] Plaintiff next alleges that the Defendant's refusal to permit Plaintiff to start work at an alternate time was the product of racial discrimination. In order to establish a prima facie

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.