Not Reported in F.Supp.2d                                                                                                               Page 8

Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

case of disparate treatment Plaintiff must allege: 1) that he is a member of a protected class; 2) that he was treated negatively vis-a-vis similarly situated individuals who are not members of a protected class. *Equal Employment Opportunity Commission v. Snyder Doors,* 844 F.Supp. 1020, 1026 (E.D.Pa.1994) (citing *Burdine,* 450 U.S. at 253-54)). Plaintiff alleges that his re-application for alternate start time was denied, despite the fact that Plaintiff informed Defendant of his transportation difficulties, which would prevent him from getting to work on time. *See* Plt. Ext. "4." Defendant, nevertheless, did not grant a later start time, which eventually led to Plaintiff's termination. Moreover, Defendant did permit another employee to maintain an alternate start time. The Supreme Court has stated that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253. Accordingly, Plaintiff has sufficiently met his prima facie burden.

[5] Defendant puts forth the explanation that company policy required all production employees to show up at 7:00 a.m. Those employees originally granted permission to start at 8:00 a.m. were required to resubmit a request form, justifying their alternate time, by outlining what hardships prevented these employees from arriving with the other employees at 7:00 a.m. Employers have a legitimate interest in setting when shift work begins, so as to run their businesses efficiently. Defendant has, therefore, met its burden of production.

*6 [6] As proof of pretext, Plaintiff asserts that 1) another employee was granted the alternate start time and, 2) he had no other way to get to work on time. *See* Plt. Affidavit. When Defendant first implemented its 7:00 a.m. start time, of more than 250 shift workers, only seven employees, including Plaintiff, were granted an alternate start time. FN3 *See* Deft. Mot. for Sum. J. p. 13. Of those seven employees, only one person was permitted to maintain this start time upon re-application. FN4

> FN3. All employees granted an alternate start time were minorities. *See* Deft. Ext. "C."

> FN4. This employee was an Asian American female who had childcare issues.

Plaintiff was originally granted an alternate start time in February 1998 because of car troubles and transportation difficulties. *See* Plt. Exts. 1, 2. Defendant asserts that Plaintiff's August 1998 re-application was denied because Plaintiff had ample opportunity to fix his car in that six month interim. Moreover, Defendant outlined a public transportation route which would get Plaintiff to work by 7:00 a.m. FN5 *See* Deft. Ext. "C" at 21-26.

> FN5. In his deposition, Plaintiff asserts that he once attempted to take the transportation route outlined by defendant, and still arrived at 8:10 a.m. *See* Ext. D, Depo. Pg 150. While Plaintiff's account about the route he took raises serious questions concerning his credibility, that is not a consideration for this court when ruling on a Motion for Summary Judgment. Even taking Plaintiffs account as true, however, Defendant's Lateness Policy does not penalize for SEPTA's lateness. *See* Harden 11. Lateness for SEPTA is considered a non-recordable lateness. *Id.* Rather than try this route again, Plaintiff simply, intentionally arrived to work late.

Having alleged disparate treatment, Plaintiff has the burden of not only showing disparate treatment but that such treatment was the result of intentional or purposeful discrimination. *McCann,* 548 F.Supp. at 1214. Plaintiff has failed to do so. Plaintiff admitted that he did not believe that the change in start time from 8:00 a.m. to 7:00 a.m. was racially motivated. *See* Deft Ext. "D." In fact, the only persons ever permitted to begin work at alternate start times were minorities. *See* Deft. Ext. "C." The only person permitted to maintain an alternate start time was a minority who had child care issues. Plaintiff, on the other hand, had six months to get his car fixed, and an alternate public transportation route available. Accordingly, Defendant's Motion on this claim is granted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

### 3. Treating Caucasian Employees More Favorably With Regard to Vacation Time

[7] Plaintiff claims that Defendant treated white employees more favorably with regard to vacation time. Plaintiff must once again meet the prima facie threshold for disparate treatment. *See Equal Employment Opportunity Commission v. Snyder Doors,* 844 F.Supp. 1020, 1026.

As an African-American male, Plaintiff is a member of a protected class, thereby fulfilling the first prong of his prima facie case. Plaintiff, however, fails to establish the second prong; that he was treated negatively vis-a-vis similarly situated individuals who are not members of a protected class. *Id.* As evidence of his negative and disparate treatment, Plaintiff alleges, no where but in his deposition, that he *heard* that there was a white employee named "John" from the maintenance department who was permitted to take almost a month of vacation in January 1998. FN6 According to Plaintiff, no one else was permitted to take vacation during those months.

> FN6. The Federal Rules of Civil Procedure permit parties opposing summary judgment to use affidavits that (1) are made on personal knowledge, (2) set forth acts that would be *admissible* in evidence, and (3) show affirmatively that affiant is competent to testify on the matters stated therein. Fed.R.Civ.P. 56(e). *See First Options of Chicago, Inc., v. Kaplan,* 913 F.Supp. 377, 382 (E.D.Pa.1996) (stating that "summary judgment is appropriate if the *admissible* evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law") (emphasis added). The plaintiff rests his entire claim of disparate treatment on a rumor that he heard, which is inadmissible hearsay.

Defendant submitted an affidavit of Frederick Tweed, Human Resources Manager for Southwark, in which he verified that there was only one "John" in the maintenance department in the past few years, Mr. John Kuchinsky. *See* Deft. Ext. "C." at 59-60. Moreover, the attendance records indicate that Mr. John Kuchinsky did not take vacation until June 1998. *Id.* at 61-62. The records indicate that this vacation was the only vacation Mr. Kuchinsky took that year as he opted to take the cash equivalent of his second and third weeks of vacation. *Id.*

*7 Defendant also puts forth an affidavit of Mr. Michael Daniels, the current Business Agent and President of Laborers' Local Union No. 57. Mr Daniels, an African-American male, attested that the Defendant's vacation policy is implemented in a nondiscriminatory manner. Deft. Ext. "I" at 52-53. Similarly, James Dargen, an African-American Southwark employee, attested that he did not know of, nor personally experience discrimination regarding vacation policy. Deft. Ext. "H" pp. 56-57. Moreover, Sharon Bates, an African-American female and former Southwark employee, who was also terminated for absenteeism and tardiness, attested that she neither knew of, nor experienced discrimination with vacation policy. *See* Deft. Ext. "G" p. 35.

Plaintiff brought nothing more than an unsubstantiated rumor as the basis of his disparate "vacation policy" claim. Without more, Plaintiff has failed to make a prima facie showing that he was treated differently than a similarly situated person in an unprotected class. Accordingly, Defendant's Motion for Summary Judgment on this claim is granted.

### 4. *Wage Discrimination for the Same Work*

[8] Plaintiff alleges that Defendant systematically pays white employees more than equally qualified minority employees on the basis of race. A prima facie case for unequal compensation based on race requires a showing that 1) plaintiff is a member of a protected class; 2) that he is qualified for the job; 3) that he was paid at a lower level that similarly situated employees. *Cooper v. Southwark Metal Co.,* 59 FEP Cases 1521 (E.D.Pa.1992). In his deposition, Plaintiff asserts that he was paid less than white employees on the sole basis of race. Considering that the burden of making a prima facie

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 10
Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

case is "not onerous," and that a Plaintiff's uncorroborated deposition testimony may create a material issue, *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990), the Plaintiff has met his initial prima facie burden.

Defendant puts forth company policy and affidavits to show legitimate, nondiscriminatory practices. Defendant again points to the depositions of Sharon Bates and James Dargen, who attested that they had no information that Defendants paid more to white employees than to minorities. Instead, Ms. Bates attested that the rate of pay is based on the Collective Bargaining Agreement ("CBA"), which is reached every three years. *See* Deft. Ext. "G" p. 17. Mr. Dargen attested to merit raises which have been given to African-Americans, White, Hispanic and Asian employees alike. *See* Deft. Ext. "H" pp. 46-48. Finally, Mr. Daniels, who is personally involved in representing union employees, attested that wage increases have no relation to an employee's race. Deft. Ext. "I" at 29-30.

[9] Plaintiff's lack of evidence in this areas makes the burden of showing pretext insurmountable. When asked to provide any examples or specifics concerning wage disparity, Plaintiff gave nothing but vague answers. When asked for names of white employees who earned more money, Plaintiff could not answer: "not by name, no....So I can't say specifically who per name, however it goes, but that usually happens that way." Deft. Ext. "D" pp. 7-8. Instead, Plaintiff speaks of an amorphous, white truck driver from approximately four to six years ago, who remains nameless and without description. *Id.* In fact, Plaintiff has no concrete information about how much money this man made because, admittedly, Plaintiff's claim is based on nothing but a rumor. FN7 Deft. Ext. "D" p. 12. Finally, despite the fact that Plaintiff was a dues-paying union member, he never filed a grievance or spoke with anyone about this matter. *See* Deft. Ext. "D," pp. 15, 17, 89.

FN7. Plaintiff's allegation is again based on inadmissible hearsay. *See supra,* n. 6.

*8 Plaintiff's claim subsumes the notion that this unidentified, white man and the Plaintiff are equally qualified. Plaintiff, however, fails to produce any evidence about the qualifications of either person. In a disparate treatment case, there must be sufficient evidence to determine whether the other employee is similarly situated to the Plaintiff. *See Robinson v. National Medical Care,* 897 F.Supp. 184, 188 (E.D.Pa.1995) (citing *Ezold v. Wolf, Block, Schorr and Solis-Cohen,* 983 F.2d 509, 531 (3d Cir.) (holding that relevant comparisons of employees must involve particular qualifications in issue)).

Because subjective beliefs of discrimination are not enough to overcome summary judgment, *Robinson v. National Medical Care,* 897 F.Supp. 184, 187 (E.D.Pa.1995), Plaintiff's rumors and generalizations are not sufficient to withstand Defendant's Motion. Defendant's Motion, therefore, is granted as to this claim.

*5. Treatment of Hazardous Work Complaints*

[10] Plaintiff alleges that Defendant would ignore complaints about hazardous working conditions made but minority employees, while promptly rectifying situations of which white employees complained. *See* Amended Comp. Para. 19, 28(h). In order to establish a prima facie case concerning work conditions, Plaintiff must allege 1) that he is a member of a protected class; 2) that he was treated negatively vis-a-vis similarly situated individuals who are not members of a protected class. *Equal Employment Opportunity Commission,* 844 F.Supp. at 1026. Plaintiff has failed meet its prima facie burden of negative, disparate treatment.

The sole instance of alleged disparate treatment in working conditions stems from Plaintiff's work as a truck driver. Plaintiff did not have a tarp to cover materials that he transported. *See* Ext. "D" pp. 45-47. By way of further explanation, Plaintiff alludes to yet another nameless, white man who allegedly was given a closed truck when he complained of a similar problem. *Id.* pp. 53-54. From what the Plaintiff *has been told,* this disparate treatment occurred six years ago: "I'm only quoting what I heard about this." FN8 *See* Ext. "D" p. 54.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 11

Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

Plaintiff could not describe this man. *Id.* Plaintiff never spoke with this man. *Id.* Plaintiff never filed a grievance with the union about this matter. *See* Deft. Ext. "D" p. 89. Plaintiff maintains no other allegations concerning working conditions except for what he has heard about this mystery employee.

> FN8. When asked where he got his information, Plaintiff responded " [d]ifferent people." Deft. Ext. "D." p. 55. When asked if he remembered the names of any of his "sources," Plaintiff could not remember. Plaintiff once again rests his claim on inadmissible hearsay. *See supra,* n. 6.

Defendant submits the affidavit of Mr. Daniels, and the depositions of Ms. Bates and Mr. Dargen, who all attest that Defendant does not respond to complaints made by white employees while ignoring complaints by minority employees. Deft. Exts. "I," "G," "H."

*9 Plaintiff's uncorroborated deposition testimony may be sufficient to raise a genuine issue of fact. *Weldon,* 896 F.2d at 800. Where Plaintiff cannot recall specific incidents, nor provide evidence of disparate treatment, however, Plaintiff's conclusory allegations are insufficient to withstand a motion for summary judgment. *See Robinson,* 897 F.Supp. at 187 (citing *Taylor v. Illinois Dept. of Revenue,* No. 91-2341, 1994 WL 55679 *6 (N.D.Ill. Feb. 23, 1994) (holding that subjective beliefs of discrimination are not sufficient to overcome summary judgment)). Accordingly, Defendant's Motion is granted as to this claim.

### 6. Drug Policy

[11] Plaintiff alleges that Defendant implements its drug policy in a racially discriminatory manner. This claim is similarly governed by the standard for disparate treatment which requires a showing that Plaintiff is 1) a member of a protected class; 2) that he was treated negatively vis-a-vis similarly situated individuals who are not members of a protected class. *Equal Employment Opportunity Commission v. Snyder Doors,* 844 F.Supp. at 1026. Plaintiff meets the prima facie burden as he points to the discrepancies in the way his mandatory drug treatment was handled when compared to the manner in which a white employee's treatment was handled.

[12] Defendant puts forth its zero tolerance drug policy as a legitimate, nondiscriminatory explanation for its actions. Any employee who tests positive for drugs has the option of either going to a treatment center or being terminated. *See* Deft. Ext. "C" at 47. Businesses have a valid interest in assuring that its employees are drug and alcohol free. This interest is particularly strong when employees are required to operate large vehicles, as in the instant case. Defendant has, therefore, sustained its burden of production.

[13] Plaintiff attempts to prove racial pretext by comparison to a white employee who also tested positive for drugs. A white female, who was injured on the job, subsequently tested positive for illegal substances. *See* Deft. Ext. "C" at 49. Plaintiff was sent to "Rehab After Work," whereas the white female went to the Frankford Hospital Rehabilitation Program. *Id.* at 55-56. Plaintiff does not allege that treatment by different facilities was discriminatory. Plaintiff's claim, rather, is derived from the fact that the white employee was permitted to come back to work within a week, whereas Plaintiff was not. FN9 *See* Affidavit p. 3. Plaintiff, once again, learns of this information through the grapevine, without being able to identify one of his sources. FN10 *See* Deft. Ext. "D," pp. 42-43. Plaintiff never spoke to the white employee about her situation. *Id.* Plaintiff never filed a grievance with his union about this alleged discrepancy. *See* Deft. Ext. "D" p. 89.

> FN9. Plaintiff also alleges that the white employee's drug treatment was paid for, while his was not. Plaintiff has not produced any evidence to substantiate this claim. Moreover, Defendant, via Frederick Tweed, attested that Plaintiff was given the option to enter drug rehabilitation, at the company's expense, pursuant to company

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 12
Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

policy. *See* Deft. Ext. "C" at 47. Plaintiff's allegations and subjective beliefs, without more, cannot overcome Defendant's Motion. *See Robinson,* 897 F.Supp. at 187

FN10. *See supra,* n. 6.

Defendant produces the Affidavit of Frederick Tweed, who attested that, like the female employee, Plaintiff was permitted to return to work after rehabilitation. *See* Deft. Ext. "C" at 48. Moreover, Mr. Tweed attested that once an employee is sent to rehabilitation, the decision about when an employee is permitted to go back to work is purely within the discretion of the treatment facility. *Id.* at 51. "Rehab After Work" made the decision to not allow Plaintiff to return to work, whereas Frankfurt Hospital made the decision to permit the white employee to return to work. *Id.* at 56. FN11 One of the reasons that "Rehab After Work" decided not to let the Plaintiff return to work was because he tested positive for drugs a second time while he was undergoing rehabilitation. *Id.* at 57. To the contrary, Defendant asserts, and Plaintiff does not dispute, that the white female was *terminated* after she tested positive for drugs a second time. *See* Deft. Mot. for. Sum. J. p. 30. Finally, Defendant puts forth the affidavit of Mr. Daniels who attested that Plaintiff was suspended and offered the opportunity to attend drug rehabilitation according to standard company procedure. *See* Deft. Ext. "I" at 62.

FN11. Defendant has no affiliation with Plaintiff's treatment center other than the fact that Defendant's employees may be treated there. *See* Deft. Ext. "C" at 58.

*10 Plaintiff has not demonstrated that minority employees were treated any differently with regard to the implementation of Defendant's zero tolerance drug policy. The Plaintiff has failed to show any relationship between the Defendant and rehabilitation centers which might suggest control or decision making authority. As such, Plaintiff has made no showing that the decision to permit employees to return to work is based on race as opposed to medical evaluation.

When the party moving for summary judgment has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material fact." *Rush,* 966 F.2d at 1116 n. 45 (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). Because Plaintiff failed to come forward with more than speculation in an effort to raise a material fact, *Keystone Data Systems, Inc. v. James F. Wild, Inc.,* 549 F.Supp. 790, 792 (E.D.Pa.1982), Defendant's Motion for Summary Judgment with regard to its drug policy is granted.

### 7. *Changing Employees' Assignments*

[14] Plaintiff next alleges that Defendant forces minority employees to change job assignments, without an increase in pay, whereas Defendant does not compel white employees to change positions at all. *See* Amended. Comp. Para. 17, 28(c). Plaintiff's claim again fails because he is unable to establish a prima facie case that he was treated negatively vis-a-vis similarly situated individuals who are not members of a protected class. *Equal Employment Opportunity Commission,* 844 F.Supp. at 1026.

Plaintiff fails to produce any evidence which would give rise to an unlawful discrimination claim. As a bargaining unit employee, Plaintiff worked under the CBA which was negotiated every three years by Local 57 and Defendant. *See* Deft. Ext. "G" p. 17. Plaintiff admitted that the CBA contained nothing that required different job positions to receive different payment. (Deft. Ext. "D" p.40.

*11 The Defense points to the affidavit of Mr. Daniels, who is President of Local 57. Mr. Daniels attested that all bargaining unit employees are classified as "laborers," and that there is no classification difference among bargaining unit employees other than the fact that they work in different departments. Deft. Ext. "I" at 37. Moreover, under the CBA, "[a]ny bargaining unit employee can be asked, and required, to perform any job he/she is assigned." *Id.* at 38. Mr. Daniels attested that it is typical for bargaining unit employees to be asked to perform various tasks,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 13
Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

without regard to race. *Id.* at 39. Finally, in Mr. Daniel's experience as President of Local 57 for the past six years, he does not believe that Defendant distinguishes between white employees and other employees when assigning jobs. *Id.* at 40.

Defense also relies on the depositions of Ms. Bates and Mr. Dargen who both attested that it was normal for Defendant to change an employee's position according to need. *See* Deft. Exts. "G," "H." They also testified that Defendant changed the positions of both white and minority employees alike. *Id.* Ms. Bates also stated that a white employee's rate of pay was not changed if he changed assignments. Deft. Ext. G. p. 14.

Because subjective beliefs are not enough to overcome summary judgment, *Taylor,* 1994 WL 55679 at *6, Defendant's Motion for Summary Judgment with regard to this claim is granted.

### 8. *Assignment to the Maintenance Department*

[15] Plaintiff alleges that Defendant intentionally staffed its maintenance department with white employees, who are paid more than Plaintiff for doing the same work. *See* Amended Comp. Para. 18, 28(d). To establish a prima facie case, Plaintiff " must prove by a preponderance of the evidence that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Martinez v. Quality Value Convenience,* 63 F. Supp 2d. 651, 655 (E.D.Pa.1999). Plaintiff cannot meet the threshold prima facie burden.

As a preliminary matter, Plaintiff never applied for or requested a position in the maintenance department. *See* Deft. Ext. "D" p. 215. Plaintiff attempts to assert, somewhat incoherently, that while he cannot perform many of the responsibilities required of a maintenance worker, he is nevertheless qualified to work in the maintenance department. *See* Deft. Ext. "D" 216-220. For example, Plaintiff admits that he cannot, among other things, fix hydraulic systems, repair fire sprinkler systems, run a lathe, read electrical blueprints, work a surface grinder, make forklift or truck repairs or work with defendant's plumbing or heating systems, all of which may be demanded of a maintenance employee. *Id.* More importantly, however, Plaintiff goes on to admit that he is *NOT* qualified to work in the maintenance department. *See* Deft. Ext. "D" p. 220.

In addition to Plaintiff's admission, Defendant points to Mr. Daniel's affidavit in which he attests that maintenance workers are paid more than other employees because of the skill involved with that position. *See* Deft. Ext. "I" at 44. Finally, Mr. Daniels, Ms. Bates and Mr. Dargen all attest that Defendant does not limit its hiring of maintenance personnel to white persons. *See* Deft. Exts. "I," "G," "H." In light of the fact that Plaintiff neither requested, nor is qualified, to work in maintenance, and because Plaintiff lacks any evidence establishing discriminatory policies, Defendant's Motion for this claim is granted.

### 9. *Assignment to the Pipe Department*

*12 [16] Plaintiff alleges that Defendant assigns only minorities to the Pipe Department, which endures the harshest labor conditions. Plaintiff makes out a prima facie case of disparate treatment in this context. Plaintiff, a member of a protected class, points to the fact that the majority of Pipe Department workers are minorities. Considering that the burden of establishing a prima facie case is not onerous, Plaintiff has sufficiently established that minorities were treated negatively vis-a-vis white employees. *See Equal Employment Opportunity Commission,* 844 F.Supp. at 1026.

[17] Defendant relies on the deposition of Sharon Bates to produce a legitimate, nondiscriminatory explanation for this discrepancy. Ms. Bates stated that Defendant does not discriminate when assigning employees to the Pipe Department. *See* Deft. Ext. "G." Moreover, taking into consideration the fact that approximately 80% of Defendant's employees are minorities, it is likely that many departments will reflect that proportional composition. Deft. Ext. "C" at 10. Defendant's evidence is sufficient to shift the burden back to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 14

Not Reported in F.Supp.2d, 2002 WL 31194220
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff.

[18] Pretext is established in the instant case by looking to the Defendant's deposition of James Dargen. Mr. Dargen worked in the Pipe Department for eight to ten years. Deft. Ext. "H" p. 15. While Mr. Dargen states that there have been white employees in the Pipe Department during that time, no white employee stayed in the Pipe Department for more than three months. *Id.* Considering Mr. Daniel's affidavit, which makes clear that Defendant has wide latitude when switching employee job assignments, Plaintiff's evidence is sufficient to raise a material issue of pretext. *See* Deft. Ext. "I" at 39. As a result, Defendant's Motion as to this claim is denied.

### 10. *Race Harassment and Retaliation*

Defendant moves for summary judgment on Plaintiff's claims of racial harassment and retaliation. *See* Deft. Mot. for Sum. J. p.34. Nowhere in Plaintiff's amended complaint, however, does he alleged either claim.

Federal Rules of Civil Procedure 8(a)(2) states that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief...." The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In an effort to weed out frivolous claims at an early stage, courts will " dismiss complaints that are 'broad and conclusory' and fail 'to state facts in support of their conclusions.' " *See Frazier v. SEPTA,* 785 F.2d 65, 66-67. (3d Cir.1986) (citing *Negrich v. Hohn,* 379 F.2d 213, 215 (3d Cir.1967)).

Plaintiff did not allege any set of facts in his complaint which could conceivably put Defendant on notice of either a racial harassment or a retaliation claim. More specifically, there has been no allegation that Plaintiff was retaliated against for engaging in protected activity. Plaintiff has likewise failed to allege any facts concerning an abusive or hostile work environment, physical threats or the frequency in which such alleged harassment occurred. FN12 Because Plaintiff has failed to plead these claims, Defendant's Motion is granted.

FN12. Plaintiff filed an affidavit in response to Defendant's first Motion for Summary Judgment, in which he asserts that he has gotten into a verbal disagreement with a manager about the manner in which he was spoken. *See* Affidavit at 19-21. Plaintiff does not allege that he was spoken to in a racially derogatory manner, either in the affidavit or anywhere else. Plaintiff has failed to allege even a single manifestation of discriminatory animus, which in itself would *not* likely raise a cause of action. *See McCann,* 548 F.Supp. at 1214 (citing *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981) (holding that "while pattern or practice of harassment directed at a single employee can violate Title VII, causal or isolated manifestations of a discriminatory environment, such as a few racial or ethnic slurs, may not raise a cause of action."). Regardless of Plaintiff's affidavit, he has nevertheless failed to plead any facts in his complaint which could give rise to a cause of action for retaliatory discrimination or harassment.

### 11. *Damages*

*13 Plaintiff seeks compensatory damages. Defendant asserts that Plaintiff is not entitled to such damage under 42 U.S.C. § 2000e-5, "In an action brought by a complaining party under [42 U.S.C. § 2000e-5] against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by ... [42 U.S.C. § 2000e-5(g) ]." *Edward-DiPasquale v.Wildran agricultural Industries, Inc.,* No.CIV.A. 00-3818, 2001 WL 1632122 (E.D.Pa. Dec.17, 2001).

Because two of Plaintiff's claims survived summary judgment, there are still genuine issues of material

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 15

Not Reported in F.Supp.2d, 2002 WL 31194220
(Cite as: Not Reported in F.Supp.2d)

fact concerning whether Defendant engaged in unlawful discrimination. Accordingly, Defendant's motion is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 2nd day of October, 2002, upon consideration of Defendant's Motion For Summary Judgment (Docket No. 28), Plaintiff's Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 29), and Defendant's Sur-Reply Brief To Plaintiff's Answer to Defendant's Motion for Summary Judgment (Docket No. 30), IT IS HEREBY ORDERED that:

(1) Defendant's Motion for Summary Judgment for the claim that Plaintiff was terminated by the Defendant based upon racial discrimination is DENIED;

(2) Defendant's Motion for Summary Judgment for the claim that the Defendant was denied his alternate start time based upon his race is GRANTED;

(3) Defendant's Motion for Summary Judgment for the claim that the Defendant treated white employees more favorably with regard to vacation time is GRANTED;

(4) Defendant's Motion for Summary Judgment for the claim that the Defendant had a systematic pattern and practice of paying Caucasian employees more than minority employees who were equally qualified is GRANTED;

(5) Defendant's Motion for Summary Judgment for the claim that the Defendant treated complaints of dangerous conditions differently depending upon whether they were made by a white employee or a minority is GRANTED;

(6) Defendant's Motion for Summary Judgment for the claim that the Defendant's drug policy was administered in a discriminatory manner is GRANTED;

(7) Defendant's Motion for Summary Judgment for the claim that the Defendant changed the job assignments of minority employees without changing their rate of pay and didn't require white employees to change assignments is GRANTED;

(8) Defendant's Motion for Summary Judgment for the claim that the Defendant staffed its maintenance department almost exclusively with white employees is GRANTED;

*14 (9) Defendant's Motion for Summary Judgment for the claim that Defendant would only assign minority employees to the Pipe Department is DENIED;

(10) Defendant's Motion for Summary Judgment for the claim that Plaintiff was subject to racial harassment is GRANTED;

(11) Defendant's Motion for Summary Judgment for the claim that Plaintiff was subject to retaliatory discrimination is GRANTED; and

(12) Defendant's Motion for an Order declaring that Plaintiff is not entitled to compensatory damages is DENIED.

E.D.Pa.,2002.
Harden v. Southwark Metal Mfg. Co.
Not Reported in F.Supp.2d, 2002 WL 31194220

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.